361 P.2d 520

**NICKERSON PUMP & MACHINERY CO., Inc., Plaintiff,**

v.

**STATE TAX COMMISSION of Utah, Defendant.**

No. 9353.

Supreme Court of Utah.

April 25, 1961.

Fabian & Clendenin, Earl Wunderli, Kent Shearer, Salt Lake City, for plaintiff.

10. Cox v. Thompson, 123 Utah 81, 254 P.2d 1047, 1052.

Walter L. Budge, Atty. Gen., F. Burton Howard, Asst. Atty. Gen., for defendant.

WADE, Chief Justice.

Certiorari to review the validity of the imposition by the Utah State Tax Commission, defendant herein, against the Nickerson Pump & Machinery Co., Inc., plaintiff herein, of a deficiency tax assessment on emplaced water pumps furnished by plaintiff to governmental units which are exempted from payment of sales taxes.

The deficiency assessment was based on water pumps assembled from parts to the specifications of the governmental agencies and emplaced by plaintiff under lump sum contracts. In lump sum contracts the cost of labor for emplacement of the pumps is included in the price charged for the pumps and is not charged separately. However, the actual cost is considered as a separate item and included by the plaintiff in its computation in arriving at the amount it will bid to obtain the business. Plaintiff is a dealer in pumping and allied equipment and specializes in water pumps. It has a Utah retail sales license. In selling and emplacing water pumps to private customers under similar lump sum contracts as those involved herein it has always collected a sales tax. Pumps are emplaced without permanent attachment to realty so that they may be readily removed for use in other places or for repairs which are frequently necessary. Although nothing was said in the agreements whether the emplaced pumps were to be considered as realty or personal property, plaintiff has always collected sales taxes on the full amount charged including the emplacement charge. Where it has been necessary for plaintiff to obtain a form of security in its sales of pumps it has used a title retaining or conditional sales contract. The deficiency assessments were imposed on the theory that in assembling and emplacing the water pumps under a lump sum agreement plaintiff was the ultimate consumer of its product and therefore liable for either a sales or use tax under the provisions of Sections 59–15–4 and 59–16–3, U.C.A.1953, depending upon whether the materials were purchased within or without the state.

Sec. 59–15–4, U.C.A.1953, so far as pertinent here provides that there be levied and paid:

"(a) A tax upon every retail sale of tangible personal property made within the state of Utah equivalent to two per cent of the purchase price paid or charged, * * *".

Sec. 59–16–3, U.C.A.1953, provides that:

"There is levied and imposed an excise tax on the storage, use or other consumption in this state of tangible personal property purchased on or after July 1, 1937, for storage, use or oth-

er consumption in this state at the rate of two per cent of the sales price of such property.

"Every person storing, using or otherwise consuming in this state tangible personal property purchased shall be liable for the tax imposed by this act, and the liability shall not be extinguished until the tax has been paid to this state."

However, Sec. 59–16–4, U.C.A.1953, subsection (h) exempts from the provisions of the use tax:

"Property which enters into and becomes an ingredient or component part of the property which a person engaged in the business of manufacturing, compounding for sale, profit or use manufactures or compounds, or the container, label or the shipping case thereof."

Since plaintiff is a dealer in pumps and allied equipment which it assembles for sale the above quoted exemption should apply, unless by its agreements to both assemble and emplace for a lump sum the water pumps it sells it becomes the ultimate consumer of the parts used by it in assembling the pumps. In Union Portland Cement Co. v. State Tax Commission,[1] this court said that subsection (h) of what is now Sec. 59–16–4, U.C.A.1953, exempts only items which become a "component part

of the property manufactured, which is thus passed on to an ultimate user. It does not exempt property which is consumed by the manufacturer as last user." In the instant case, however, the evidence is clear that in assembling the various parts which make up the water pumps their identities are not changed and plaintiff does not use up any of them in the process of manufacturing. Since plaintiff does not actually use up, destroy or change the identities of the items in assembling the water pumps, it can only be found to be the ultimate consumer of those assembled pumps and therefore not exempt from the use tax because, by its agreements to both assemble and emplace the pumps it was not assembling the pumps for sale as such pumps, but was entering into contracts where the assembling of the pumps was incidental to agreements to improve or alter the real property of others, thus, in effect, upon emplacement changing the nature of the pumps from personalty to real property. If this was the effect of the agreements to both assemble and emplace then, as this court has held in Utah Concrete Products Corp. v. State Tax Commission,[2] such a use of tangible personal property would not be for the purpose of sale, but would be a consumption of the property by the contractor who used it to change its nature from personal to real property.

1. Union Portland Cement Corp. v. State Tax Commission, 110 Utah 135, at page 149, 170 P.2d 164, at page 171.

2. Utah Concrete Products Corp. v. State Tax Commission, 101 Utah 513, 125 P. 2d 408.

The question which we must determine, therefore, is do the facts sustain a conclusion that the emplacement by plaintiff of the assembled pumps change their nature from personalty to realty, thereby making it the ultimate consumer of the personal property used in the assemblage of the water pumps.

Had the assembled water pumps been sold without the obligation to emplace there could be no question but what plaintiff would be making retail sales of personal property, and so were these water pumps changed from personal property to realty when emplaced? We are of the opinion that they were not. When assembled, delivered and installed the water pumps were entities which were readily removable without harm to the structures in which they were placed. Other pumps could easily be placed in these structures. The pumps themselves were so manufactured, even though to specification, that they could be used on different locations when it was convenient for the buyers to transfer them to such locations. It was contemplated that the pumps would not remain where placed but would be removed either for repairs or for changes in location. The primary purpose of the agreements were for the sale and purchase of water pumps assembled to particular specifications. The emplacement was incidental to such purpose and was a mere convenience for the purchaser because of the great weight of the pumps which required special equipment to move them. However, the fact that massiveness of the pumps required special equipment to move them would not change their nature from personalty to realty any more than would a massive desk or refrigerator built to specifications for use in a building be changed from personalty to realty without evidence that the parties to the agreements so intended. Whether and when personalty becomes realty is a very difficult question to determine and the facts peculiar to each case must usually determine that question. The Minnesota Supreme Court in Pabst v. Ferch,[3] had occasion to determine whether a gasoline engined water pump placed in a structure built for the purpose of housing it was a part of the realty and concluded that the structure was a part of the realty but that the pump was not.

We conclude that plaintiff was not the ultimate consumer of the tangible personal property used by it in assembling water pumps and that by its agreements it was selling pumps at retail and only liable for the collection of the sales taxes thereon to nonexempt agencies or persons.

The order of the Tax Commission is hereby reversed. No costs allowed.

HENRIOD, McDONOUGH, CALLISTER, and CROCKETT, JJ., concur.

3. Pabst v. Ferch, 126 Minn. 58, 147 N.W. 714, L.R.A.1915E, 822; see also Behrens v. Kruse, 121 Minn. 479, 140 N.W. 114.